Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| SANTOS Y. LARACUENTE VÉLEZ<br><br>**Parte recurrente**<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>**Parte recurrida** | **TA2026RA00266** | **REVISIÓN ADMINISTRATIVA**<br>Procedente la Junta de Libertad Bajo Palabra<br><br>Caso Núm.:<br>**150187**<br><br>Sobre:<br><br>No Jurisdicción-Pena Especial |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pérez Ocasio y la juez Trigo Ferraiuoli

Pérez Ocasio, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de junio de 2026.

Comparece ante nos, Santos Y. Laracuente Vélez, en adelante, Laracuente Vélez o recurrente, y nos solicita que revisemos la *Resolución* emitida el 17 de febrero de 2026, notificada el 13 de marzo de 2026 por la Junta de Libertad Bajo Palabra, en adelante, Junta o recurrida. En ella, la Junta se abstuvo de ejercer su jurisdicción para atender la solicitud presentada por el recurrente para obtener los beneficios de libertad bajo palabra, hasta tanto acreditara haber satisfecho la pena especial que le fue impuesta mediante sentencia o haber sido relevado de realizar el referido pago.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido

## I.

Laracuente Vélez fue procesado por nueve (9) cargos[1] por infracciones a los Artículos 401 y 412 de la *Ley de Sustancias*

---

[1] Estos fueron presentados bajo los casos ISCR202100348, ISCR202100349, ISCR2022001126, ISCR2022001127, ISCR2022001128, ISCR20230052, ISCR20230053, ISCR20230054 y ISCR20230055. *Véase*, Apéndice del recurso, anejos I y II.

*Controladas de Puerto Rico*[2] y al Artículo 285 del *Código Penal de Puerto Rico de 2012*,[3] en adelante, Código Penal de 2012.

Tras haber realizado una alegación de culpabilidad, el 1 de julio de 2023, el recurrente fue sentenciado por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en adelante TPI-Mayagüez, a una pena de once (11) años de reclusión,[4] la cual se encuentra extinguiendo en la Institución Correccional de Sabana Hoyos 216 en el Municipio de Arecibo.[5] Adicional a dicha pena, el TPI-Mayagüez le impuso *una pena especial* de trescientos dólares ($300.00) para cada delito, para un total de dos mil setecientos dólares ($2,700.00).[6]

Posteriormente, el 22 de enero de 2025, Laracuente Vélez presentó ante el TPI-Mayagüez una moción al amparo de la *Ley para la Imposición de la Pena Especial del Código Penal de Puerto Rico*, Ley Núm. 34 de 27 de agosto de 2021, 4 LPRA sec. 1661, en adelante Ley Núm. 34-2021.[7] En síntesis, alegó carecer de recursos económicos por razón de su confinamiento y que cumplía con la presunción de indigencia que establece el precitado estatuto por estar representado por la Sociedad de Asistencia Legal, por lo cual solicitó que se le eximiera del pago de la pena especial que le fuera impuesta.

La referida petición del recurrente derivó un trámite apelativo ante este Tribunal,[8] mediante el cual dos (2) paneles hermanos emitieron sendas sentencias en la cual se determinó que *no procedía*

---

[2] Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2101 *et seq.*
[3] Ley Núm. 146 de 30 de julio de 2012, 33 LPRA sec. 5001 *et seq.*
[4] Apéndice del recurso, anejo III. Dicha pena de reclusión surge tras determinarse que la misma se cumpliría de forma concurrente entre sí y consecutiva con los demás casos.
[5] Apéndice del recurso, anejo VIII, pág. 1.
[6] *Íd.*, anejo III, pág. 1.
[7] *Íd.*, anejo IV.
[8] El apéndice del recurso no contiene documentos relacionados al referido trámite. No obstante, conforme a las alegaciones del recurrente, y en virtud de la facultad que nos provee la Regla 201 de Evidencia, 32 LPRA Ap. VI, tomamos conocimiento judicial de tales hechos adjudicativos.

*eximir a Laracuente Vélez del pago de la pena especial.*[9] Los referidos paneles concluyeron que, conforme a la intención legislativa, la condición de indigencia que faculta la aplicación de la Ley Núm. 34-2021 debía evaluarse con referencia a la situación económica del convicto existente *al momento en que se dicta sentencia,* y no a base de circunstancias posteriores.

Paralelamente, tras haber recibido una solicitud de Laracuente Vélez, la Junta señaló para el 11 de abril de 2025 una vista para considerar una petición sobre el privilegio de libertad bajo palabra.[10] No obstante, la misma fue suspendida en dos (2) ocasiones,[11] celebrándose finalmente el 4 de febrero de 2026.[12] Entretanto, el 16 de diciembre de 2025, el Departamento de Corrección y Rehabilitación emitió un *Informe de Ajuste y Progreso a la Junta de Libertad Bajo Palabra.*[13]

Así las cosas, el 17 de febrero de 2026, notificada el 13 de marzo de 2026, la Junta emitió la *Resolución* recurrida.[14] En ella, la recurrida razonó que no podía adquirir jurisdicción sobre el caso del recurrente de conformidad con el derecho aplicable. Ante ello, determinó que consideraría la petición de Laracuente Vélez luego de que este presentara prueba de que realizó el pago de la pena especial impuesta por el TPI-Mayagüez o, alternativamente, que fue eximido de realizar el mismo.

Inconforme, el recurrente presentó una *Moción de Reconsideración* ante la Junta el 1 de abril de 2026, la cual fue recibida por correo el 6 de abril de 2026.[15] Transcurridos los quince (15) días estatutarios sin que la agencia se expresara, Laracuente

---

[9] Véase nuestras sentencias del 17 de septiembre de 2025 y del 24 de septiembre de 2025, para los recursos a los cuales le fueron asignados el alfanumérico KLCE20200588 y TA2025CE00416, respectivamente.
[10] Apéndice del recurso, anejo VI.
[11] *Íd.*, anejos VI y VII.
[12] *Íd.*, anejo VIII, pág. 1.
[13] *Íd.*, anejo V.
[14] *Íd.*, anejo VIII.
[15] *Íd.*, anejo IX.

Vélez recurre ante nos mediante un recurso de revisión administrativa fechado el 20 de mayo de 2026, en el cual planteó el siguiente señalamiento de error:

> LA JUNTA DE LIBERTAD BAJO PALABRA INCURRIÓ EN UN CLARO Y PATENTE ABUSO DE DISCRECIÓN AL DENEGAR – SO PRETEXTO – DE FALTA DE JURISDICCIÓN PARA LA CELEBRACIÓN DE LA VISTA DE CONSIDERACIÓN PARA LA CONCESIÓN DE LIBERTAD BAJO PALABRA AL AQUÍ PETICIONARIO CUANDO DICHA DETERMINACIÓN NO ESTÁ FUNDAMENTADA EN DERECHO. AMPARÁNDOSE PARA LO ANTERIOR, EN UNA EXÉGESIS EQUIVOCADA Y, POR CONSIGUIENTE, APLICACIÓN DE LA LEY NÚM 34 DE 27 DE AGOSTO DE 2021, CONSTITUYENDO LO ANTERIOR EN UNA VIOLACIÓN FLAGRANTE A LA IGUAL PROTECCIÓN DE LAS LEYES Y EN UN DISCRIMEN POR CONDICIÓN SOCIAL.

Mediante nuestra *Resolución* del 22 de mayo de 2025, le concedimos a la Junta hasta el 9 de junio de 2026 para presentar su posición en cuanto al recurso. Llegada la fecha concedida, la recurrida compareció mediante su *Escrito en Cumplimiento de Resolución.*

Perfeccionado el recurso, procedemos a expresarnos.

**II.**

**A. Revisión Administrativa**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Tricoche Matos y otro v. Luis Freire*, 2025 TSPR 92, 216 DPR ___ (2025); *Vázquez et al v. DACo,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances,* 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008).

De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". *Id.*

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalaqcua v. Quirós, Betances,* supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *J.H.V. v. Negociado de la Policía,* 2025 TSPR 139, 216 DPR ___ (2025); *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *J.H.V. v. Negociado de la Policía,* supra, *Katiria's Café, Inc. vs. Mun. San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó

un ejercicio razonable de su discreción administrativa. *Vur-Jer v. Junta Reglamentadora*, 2026 TSPR 46, 218 DPR ___ (2026); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *J.H.V. v. Negociado de la Policía*, supra; *Transp. Sonell v. Jta. Subastas ACT*, supra; *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Rolón Martínez v. Supte. Policía*, supra, pág. 35.

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAUG establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675; *J.H.V. v. Negociado de la Policía,* supra. Así, la parte que impugna las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, supra, págs. 88-89; *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 128; *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

Por su parte, la LPAUG dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". 3 LPRA sec. 9675; *Vur-Jer v. Junta Reglamentadora*, supra; *J.H.V. v. Negociado de la Policía,* supra; *Rolón Martínez v.*

*Supte. Policía*, supra, pág. 36. Esta máxima está impregnada en la fábrica del derecho anglosajón, que en virtud de nuestra fusión jurídica con los Estados Unidos de América nos aplica, desde el famoso caso *Marbury v. Madison*, 5 US 137 (1803), en el que se estableció que "determinar cuál es el derecho es, categóricamente, el ámbito y el deber del poder judicial".

A esos efectos, nuestro Tribunal Supremo aclaró recientemente que, a través de la precitada disposición en la LPAUG, el legislador eliminó la deferencia judicial sobre las determinaciones de derecho que realizan las agencias administrativas. *Vázquez et al. v. DACo,* supra. Lo cierto es que "la interpretación de la Ley es una tarea que corresponde inherentemente a los tribunales". *Freyre Martínez v. Consejo de Titulares*, 2026 TSPR 20, 217 DPR ___ (2026); *Vázquez et al. v. DACo,* supra.

Así, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la Agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Vur-Jer v. Junta Reglamentadora*, supra; *J.H.V. v. Negociado de la Policía,* supra; *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021).

### B. Junta de Libertad Bajo Palabra

La Constitución de Puerto Rico establece como política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Artículo VI, Sección 19, Const. PR, LPRA Tomo I. *Lebrón Laureano v. Dpto. Corrección*, 209 DPR 489, 498-499 (2022). A esos fines existe la Junta, regulada, a su vez, por la *Ley de la Junta de Libertad Bajo Palabra*, Ley Núm. 118 de 22 de Julio de 1974, 4 LPRA sec. 1501 *et seq.*, en adelante, Ley de la Junta.

El sistema de libertad bajo palabra permite que una persona que haya sido convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad. *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987). A tales efectos, tiene el propósito principal de ayudar a las personas confinadas a reintegrarse a la sociedad en forma positiva tan pronto estén capacitados, sin tener que estar encarcelados por todo el término de la sentencia impuesta. 4 LPRA sec. 1503.

La Junta es responsable de considerar el "mejor interés de la sociedad" y concederá los privilegios de libertad que está facultada para otorgar "cuando las circunstancias presentes [le] permitan [...] creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente". 4 LPRA sec. 1503(a).

Con ese propósito, la Sección 14.1(A) del Artículo XIV del Reglamento de la Junta de Libertad Bajo Palabra, Reglamento 9684 de 8 de agosto de 2025, en adelante, Reglamento de la Junta, establece que "[l]a Junta tomará su determinación a base de la preponderancia de la prueba, a la luz de la prueba presentada durante la vista y la totalidad del expediente del caso". A su vez, la Junta "evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión". Reglamento de la Junta de Libertad Bajo Palabra, Artículo X, Sección 10.1(A).

A esos fines, la Ley de la Junta dispone los siguientes criterios que deberá evaluar la Junta para determinar la elegibilidad de los que solicitan la libertad bajo palabra:

(1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

(2) Las veces que el confinado haya sido convicto y sentenciado.

(3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

(6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

(11) *Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.* La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

4 LPRA sec. 1503d. (Énfasis suplido).

Por su parte, el Artículo 3(a)(6) de la precitada Ley dispone que, para determinar si procede conceder el privilegio de libertad bajo palabra, la Junta tendrá ante sí toda información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado. 4 LPRA sec. 1503(a)(6).

Cónsono con lo anterior, la Junta tiene el deber de evaluar ciertos criterios relacionados al historial delictivo del peticionario, entre estos, *"[s]i cumplió con el pago de la pena especial para el Fondo de Compensación y Servicios a las Víctimas y Testigos de Delito, dispuesta en el Artículo 48 (i) del Código Penal de 2012,* en los casos que aplique". Reglamento de la Junta, Sección 10.1(B)(1)(d) del Artículo X. (Énfasis suplido).

En lo pertinente, el Artículo 4 de la Ley de la Junta dispone que, cuando una persona fuese convicta conforme al Código Penal vigente, "la elegibilidad de los casos para consideración por la Junta se determinará conforme a la clasificación de gravedad de delito y *a las condiciones para su concesión que establece el mencionado cuerpo legal*". 4 LPRA sec. 1504. (Énfasis suplido). Por su parte, la Sección 7.2(C) del Artículo VII del Reglamento de la Junta establece que la Junta tendrá jurisdicción sobre aquellas convicciones bajo el Código Penal de 2012 que apliquen conforme al derecho que está vigente.

De otro lado, el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, 3 LPRA Ap. XVIII *et seq.*, establece ciertas circunstancias que impiden que un convicto participe de los privilegios que ofrecen los distintos programas de desvíos disponibles en nuestro ordenamiento jurídico. Sobre esto, su Artículo 16 dispone que:

> No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:
>
> [....]
>
> d) toda persona convicta mientras no haya satisfecho la pena especial dispuesta en el Código Penal de Puerto Rico, a menos que posea un plan de pago a plazos sujeto a las disposiciones de la "Ley para la Imposición de la Pena Especial del Código Penal de Puerto Rico".
>
> 3 LPRA Ap. XVIIII, Art. 16.

En consecuencia, nuestro Tribunal Supremo puntualizó que "*la satisfacción de [la] pena especial es requisito previo a la participación del convicto en programas de desvío y rehabilitación de la Administración de Corrección,* en hogares de adaptación social, y para la concesión de una libertad a prueba". *Pueblo v. Silva Colón*, 184 DPR 759, 776 (2012), citando a D. Nevares-Muñiz, *Código Penal*

*de Puerto Rico*, 3ra ed. rev., San Juan, Ed. Inst. Desarrollo del Derecho, 2008, pág. 99. (Énfasis suplido).

Finalmente, huelga mencionar que, por su naturaleza estatutaria y lo establecido en nuestra jurisprudencia, los beneficios de libertad bajo palabra no son derechos que se puedan exigir, sino que se trata de privilegios cuya concesión y administración son puramente discrecionales y recaen en la Junta. Estos son privilegios concebidos para ayudar a los convictos en su proceso de rehabilitación y se considera que mientras se disfruta de estos beneficios, la persona está técnicamente en reclusión. *Pueblo v. Negrón Caldero,* 157 DPR 413, 420 (2002); *Pueblo v. Martínez Rivera,* 99 DPR 568, 575 (1971).

### C. Pena Especial

El Código Penal de 2012 confiere facultad a los tribunales para imponerle a cualquier persona natural una pena especial destinada al *Fondo de Compensación y Servicios a las Víctimas y Testigos de Delito.* 33 LPRA sec. 5081(i). En virtud de ello, el Artículo 61 del Código Penal de 2012 establece lo siguiente:

> Además de la pena que se impone por la comisión de un delito, el tribunal *impondrá a todo convicto* una pena especial equivalente a cien (100) dólares, por cada delito menos grave y trescientos (300) dólares por cada delito grave. La pena aquí dispuesta se pagará mediante los correspondientes comprobantes de rentas internas. Las cantidades así recaudadas ingresarán al Fondo Especial de Compensación a Víctimas de Delito. Esta penalidad se fijará según se dispone en la "Ley para la imposición de la Pena Especial del Código Penal de Puerto Rico"

> 33 LPRA sec. 5094. (Énfasis suplido).

El precitado Artículo actualmente recoge las enmiendas de la Ley Núm. 34-2021, la cual fue promulgada con el fin de "garantizar la igual protección de las leyes a toda persona convicta que por su condición social no pueda satisfacer la pena especial establecida den el Código Penal de Puerto Rico". 4 LPRA sec. 1662. De esta manera,

se le brinda una oportunidad a la persona convicta para que pueda participar de aquellos beneficios y privilegios que nuestro ordenamiento jurídico le provee a favor de su rehabilitación moral y social. *Íd.*

Durante la aprobación de la Ley Núm. 34-2021, nuestra Asamblea Legislativa reconoció que, bajo el estado de derecho vigente, una persona convicta se encuentra impedida de obtener los beneficios de programas de rehabilitación correccional, como el de libertad bajo palabra, si se la ha impuesto la pena especial contemplada en el Código Penal, y este no ha cumplido con el pago de la misma. Exposición de Motivos de la Ley Núm. 34-2021. Esto, pues, la aprobación inicial del Código Penal vigente no contemplaba la posibilidad de eximir a una persona convicta del referido pago por su condición social de indigencia. *Íd.* Así, la pena especial quedó estatuida como un componente inextricablemente atado a la sentencia. *Íd.*, citando a *Pueblo v. Silva Colón*, supra, pág. 777.

Así, el Legislador expresó que la carencia de un proceso para que los tribunales considerara la indigencia del convicto presentaba un obstáculo constitucional, a saber: "cuando la persona convicta es pobre y no puede pagar la pena especial, por el solo hecho de su condición social, no se beneficiará de los beneficios ofrecidos para los que sí pueden pagar la pena especial". Exposición de Motivos de la Ley Núm. 34-2021. Es decir, "una persona que no cumpla con la pena especial por su condición económica podría permanecer mayor tiempo en la cárcel, sin cualificar para los programas de desvío, en comparación con otra persona que tenga la misma sentencia y capacidad económica para satisfacer la pena especial". *Íd.*

A tales fines, la Ley Núm. 34-2021 fue aprobada con el propósito de establecer un procedimiento en el cual *el tribunal pueda considerar la indigencia* de la persona convicta al momento de evaluar si procede la imposición de la pena especial que establece

nuestro Código Penal. *Íd.* (Énfasis suplido). Asimismo, el precitado estatuto fija un procedimiento post-convicción para solicitar la exención o un plan de pago a plazos para satisfacer la pena especial, aplicable retroactivamente a favor de las personas convictas bajo el Código Penal de 2004, así como el Código Penal de 2012. *Íd.*

A tenor con lo anterior, la Sección 4 de la Ley Núm. 34-2021 faculta a los tribunales a eximir el pago de la pena especial, ya sea por iniciativa propia o a solicitud de la persona convicta. 4 LPRA sec. 1664. Para ello, debe cumplirse con al menos una de las siguientes circunstancias:

1. El Ministerio Público no presenta objeción fundada para que se exima.

2. La persona convicta es indigente representado por la Sociedad para la Asistencia Legal, por una institución que ofrezca representación legal gratuita a indigentes, o un abogado de oficio.

3. Por fundamento de indigencia constatado a satisfacción del Tribunal.

*Íd.*

Sin embargo, el precitado estatuto establece una presunción a favor de la indigencia de la persona convicta cuando esta se encuentre representada por una organización, persona o entidad que ofrezca servicios de representación legal a personas de escasos recursos, o cuando el convicto no pueda ser representado por tales organizaciones por alguna razón no relacionada a sus recursos económicos, aun cuando cualifique a dicha representación legal. *Íd.*

Asimismo, los tribunales gozan de discreción para establecer un plan de pago mediante el cual la persona convicta pueda satisfacer la pena especial, en aquellos casos en que no pudo eximirse del referido pago. 4 LPRA sec. 1665.

Por su parte, la Sección 6 de la Ley Núm. 34-2021, *supra*, sec. 1666, provee un procedimiento para que la persona convicta solicite la exención o un plan de pago a plazos sobre la pena especial en una

etapa posterior a la emisión de la sentencia. Sobre esto, la Sección aludida dispone que:

> Luego de dictada la sentencia, la persona convicta podrá presentar una petición para la celebración de una vista con el fin de considerar la concesión de la exención o el pago a plazos. El peticionario deberá exponer las razones para la celebración de dicha vista, basada en su condición de indigencia o falta de capacidad económica para satisfacer la pena especial correspondiente. Celebrada la vista, *el tribunal determinará si procede la exención, el pago a plazos o el saldo total de la pena especial impuesta a la persona convicta.*

4 LPRA sec. 1666. (Énfasis suplido).

### III.

En su *único señalamiento de error,* Laracuente Vélez alega que la Junta abusó de su discreción al declararse sin jurisdicción para celebrar una vista con el fin de considerar si este era elegible para los beneficios de libertad bajo palabra, dado que este no había satisfecho la pena especial impuesta. Arguye que la recurrida fundamentó su supuesta denegatoria en una interpretación errónea de la Ley Núm. 34-2021, lo cual configuró un discrimen por su condición social y una violación a la igual protección de las leyes.

El recurrente sostiene que la presunta violación constitucional resultó debido a que la Junta no tomó en consideración su presunta condición social de indigencia, la cual insiste que lo cualifica para obtener la exención de la pena especial conforme a las disposiciones de la Ley Núm. 34-2021 y, por tanto, los privilegios de libertad bajo palabra. *No le asiste la razón.*

Cual citado, la Junta tiene jurisdicción para atender una solicitud para obtener el privilegio de libertad bajo palabra para convicciones al amparo del Código Penal vigente, cuya elegibilidad se determinará de acuerdo con la gravedad del delito y las condiciones que establece el referido Código para su concesión.

Entre tales condiciones, la Junta tiene el deber de evaluar, entre otros criterios, si al convicto se le impuso la pena especial contemplada en el Código Penal de 2012 y si este cumplió con su pago o, en su defecto, que posee un plan de pago sujeto a las disposiciones de la Ley Núm. 34-2021. Esto, pues, la satisfacción de dicha pena es un requisito previo para participar de los programas de rehabilitación correccional.

Por otro lado, la Ley Núm. 34-2021 fue promulgada con el fin de establecer un procedimiento judicial mediante el cual un convicto pueda solicitar la exención o un plan de pago para satisfacer la pena especial que le fuese impuesta, amparado en que carece de recursos económicos. Por tanto, de cumplir con ciertos criterios, el tribunal podrá declarar su condición social de indigencia previo a determinar si procede la solicitud del convicto.

Tras un análisis sosegado de las alegaciones del recurrente, contrapuestas al dictamen recurrido y al derecho vigente, concluimos que los planteamientos de Laracuente Vélez carecen de méritos. Después de todo, el recurrente sustenta los mismos en la presunta indigencia que sobrevino posteriormente sobre él debido a que se encuentra recluido.

Sin embargo, en su recurso, Laracuente Vélez no expuso razón ni fundamento jurídico alguno que nos mueva a concluir que la Junta aplicó errónea o arbitrariamente las leyes que administra para auscultar su jurisdicción sobre su solicitud de libertad bajo palabra. Por el contrario, el recurrente extensamente arguye sobre la presunta aplicación errada de la Ley Núm. 34-2021 por parte de la recurrida para declararse sin jurisdicción.

No obstante, nada en la *Resolución* recurrida sostiene sus argumentos. La determinación de la Junta versa únicamente sobre la jurisdicción que tiene sobre la solicitud del recurrente, la cual quedó suspendida hasta tanto este último acredite el pago, o la

obtención de un plan de pago, para satisfacer la pena especial que le fue impuesta por el TPI-Mayagüez como parte de la sentencia condenatoria que se encuentra extinguiendo.

En cuanto a la supuesta aplicación de la Ley Núm. 34-2021, lo único que la Junta consignó en su *Resolución* respecto a dicha Ley fue una breve orientación sobre el proceso que tiene disponible para presentar una solicitud ante el Tribunal de Primera Instancia para que se le exima o se le conceda un plan de pago con relación a la pena especial que le fue impuesta.[16] Es decir, la Junta en ningún momento aplicó la Ley Núm. 34-2021 para auscultar su falta de jurisdicción, sino que tal acto se amparó exclusivamente en la Ley de la Junta y en su Reglamento.

Asimismo, apreciamos que los argumentos del recurrente persiguen conseguir una declaración de indigencia para quedar exento de satisfacer la pena especial por parte de la Junta y, por consiguiente, de este Tribunal. No obstante, debemos aclarar que tal procedimiento es uno que compete exclusivamente al Tribunal de Primera Instancia. Así lo dispone expresamente la Ley Núm. 34-2021.[17] Por consiguiente, la Junta no tenía obligación alguna para atender los reclamos de indigencia del recurrente.[18]

A base de lo anterior, consideramos que nada en la determinación de la Junta se traduce en una denegatoria al privilegio de libertad bajo palabra como insinúa Laracuente Vélez. Ante ello, el recurrente aún cuenta con la posibilidad de obtener el mismo de resolver, por cualquier mecanismo provisto en ley, la extinción de la pena especial que le fue impuesta. Por tal razón, no cabe hablar de una obstaculización al proceso de solicitud del

---

[16] *Véase*, Apéndice del recurso, Anejo VIII, págs. 1-2.

[17] Inclusive, tal hecho fue reconocido por el recurrente en su recurso. *Véase*, SUMAC TA, entrada núm. 1, documento principal, pág. 33-34.

[18] Nótese, complementariamente, que nada en la Ley de la Junta ni en su Reglamento establece que la Junta tenga facultad para declarar la indigencia de un convicto ni para arrogarse jurisdicción para atender una solicitud para obtener los privilegios de la libertad bajo palabra ante una presunción de indigencia.

privilegio que peticiona, ni mucho menos de una violación constitucional a la igual protección de las leyes ni de un discrimen por razón de su condición social al evaluar la misma.[19]

Por todo lo anterior, colegimos que la Junta no erró ni abusó de su discreción al determinar que no tenía jurisdicción —al presente— para celebrar una vista para considerar la solicitud presentada Laracuente Vélez para obtener el privilegio de libertad bajo palabra. De conformidad con la Ley de la Junta y su Reglamento, la recurrida no podía tomar otra determinación hasta tanto tuviese prueba sobre la extinción o un plan de pago relacionado a la pena especial. En consecuencia, *la Junta no cometió el error imputado.*

**IV.**

Por los fundamentos antes expuestos, ***confirmamos el dictamen recurrido en su totalidad.***

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[19] Además, tampoco vemos la violación que plantea el recurrente, en la medida en que este participó del procedimiento post-convicción que establece la Ley Núm. 34-2021, mediante el cual tuvo el beneficio de que tanto el TPI-Mayagüez como este Tribunal dirimiera sus reclamos de indigencia, de conformidad con las disposiciones de la precitada Ley y la jurisprudencia aplicable.